After advisement, the following opinions were delivered :
“By the Chancellor.
The right of the plaintiff to recover in [ *232 ] this suit, depended upon the question whether the public administrator of the city of New-York was legally authorized and empowered to convey to the defendant the lot No. 60 in Broad-street, at a price to be agreed upon between those parties, or at a fair price to be fixed upon by appraisers, if the parties could not agree between themselves, according to the terms of the lease of January, 1825, and the condition of the defendant’s bond.
Two questions are therefore presented for our consideration on this writ of error. First: Whether an administrator with the will annexed, is authorized, under the provisions of the Revised Statutes, to execute a power in trust given to the executors by the will of the testator in relation to real estate ? And Secondly: Whether, if he was so authorized, he could have executed it in the manner contemplated in the lease and bond set out in the pleadings and bill of exceptions in this ease, instead of selling the premises at public auction according to the provisions of the Revised Statutes in force at the time this suit was brought.
There cannot be a doubt that at the common law, an administrator with the will annexed, could not have executed a power in trust relative to real estate given to the executors by the will, unless the testator himself, in express terms or by necessary implication, had authorized the administrator to execute such power, in case the executor should die or renounce the execution of the trust. And if the executor of an executor could in any case be considered as capable of executing the trust of the will of the original testator in relation to real estate, it must have been in those cases only where, from the language of the will itself, it was evident the testator intended the power to be thus transmissible in succession to the executor of his own executor. It was upon such an implied intention of the testator that Justice Wyld based his opinion in the case of Pitt v. Pelham, 1 Ch. Ca. 178; although that opinion was not sustained by his associates on the bench of the equity court, or by the common pleas, to whom the case was sent for a legal decision. Neither was his opinion sustained by the house of lords, for although *the decree of the Lord Keeper dismissing the bill [ *233 ] was reversed upon the appeal, the appellate court decided that the heir in that case, on whom the legal title had descended charged with the *178 trust, should sell for the purpose of paying the testator’s debts, agreeably to the directions of the will.
If the administrator with the will annexed, therefore, had any power tp sell in the case now under consideration, it must be by virtue of the special provisions of our own statute on the subject. The provision in the statute of distributions in England, in relation to administration with the will annexed, appears to have been intended as a mere exception to the general direction of the act relative to the distribution of estates, by administrators, among the next of kin of the decedent. It was in the form of a proviso, “ that in all cases where the ordinary hath used heretofore to grant administration cum testamento annexo, he shall continue so to do, and the will of the de" ceased in such testament expressed shall be performed and observed in such manner as it should have been if this act had never been made.” 2 Evans’ Stat. 395, § 9. The corresponding provision in the revision of 1787, in this state, is nearly in the same language. 1 Greenl. Laws 368, § 16. In the revision of 1801, the 20th section of the “ act concerning executors and administrators, and the administration of intestate’s estates,” 1 R. L. of 1801, p. 541, after adopting the provision and nearly the language of the 16th section of the act of 1787, has the following additional clause : “ And that this act shall extend to administrators with such will annexed, in the same manner as if they were executors named in the will.” And that section was re-enacted in the revised act of 1813, on that subject, in the same words. 1 R. L. of 1813, p. 316, § 21.
It was probably this additional clause which induced the learned gentleman, to whose opinion I alluded on the argument of this case, as having been given shortly after the revision of 1801, to conclude that the common law powers of the administrator -with the will annexed had been altered by statute, so as to enable him to execute a power of sale of real es- [ *234 ]' tate given to the executors by the will. I had, ^however, always entertained doubts as to the correctness of that opinion: and those doubts are very much increased by the examination I have given to the subject since the argument in the present case. By referring to the revision of 1787,1 find this section relative to administrators with the will annexed, was not in the “ act concerning executors and administrators,” hut in a separate and distinct statute, and that when the revisers of 1801, combined in one act various provisions which were not thus connected in the former revision, this clause was probably added to the original section, for the mere purpose of extending to the administrator with the will annexed, the provisions of various other sections of the revised act of 1801, relative to the powers and duties of executors, and to save the unnecessary repetition in those sections, of the words “ and administrators with the will annexed,” in connection with the term “ executors.” As there was nothing contained *179 in that act in relation to the powers and duties of executors, concerning the testator’s real estate, this additional clause in the revised acts of 1801 and of 1813, did not in fact extend, the common law power of' the administrator in that respect; unless the term willx as used in our statutes, was intended to have a more enlarged operation than the word testament, which was used *n the statute .of Charles.
The language of the twenty-second section of the title relative to granting letters testamentary and of administration in the Revised Statutes of 1830 is, however, exceeding broad ; and- there is nothing in the section itself to show that the powers thereby given to administrators with the will annexed, were not intended to be as extensive, both as to real and personal estate, as those of the executors would have been in case they had assumed the execution of the will. This section provides that “ in all cases where letters of administration with the will annexed shall be granted, the will of the deceased shall be observed and performed and the administrators with such will shall have the rights and powers and be subject to the same duties as if they had been named executors in such will” Upon the first reading of this general provision, in connection with the fifteenth and sixteenth *sections of the same title, which prohibit the executors from [ *235 ] selling or intermeddling with any part of the estate of the testator before letters testamentary are granted, and superseding every executor named in the will who is not named in the letters testamentary, or of administration with the will annexed, and totally deprived them of all power whatever as executors, I certainly did not entertain any doubt that it was the intention of the revisers and of the legislature to substitute the administrator with the will annexed, in the place of the executors who had neglected to accept the office, as to all the trusts of the will, both as to the real and the. personal estate ; and I am not yet fully satisfied that such was not the intention of these new provisions of the Revised Statutes, though considerable doubt is thrown around the question by the decision of the supreme court, and the very able argument of the counsel for the defendant in error. The conclusion, however, at which I have arrived on the other question in this cause, renders it unnecessary for me to pronounce a definitive opinion upon the construction and effect of these new provisions of the Revised Statutes, as to the right of an administrator with the will annexed, to execute the trusts of such will in relation to the real estate of the decedent; or as to the power of an executor, who has neglected or refused to take out letters testamentary upon the personal estate, to go on and execute the trusts of the will as to the testator’s real property, as he could have done at the common law. Upon this last point, I expressed a decided opinion against the exercise of such a power by any executor who had not taken out letters testamentary, in a recent case relative to the will of Clendinning, Be *180 Peyster’s admin’r, &c. v. Clendinning and others, in Chan. April 21. That opinion, however, is very much shaken by the decision of the supreme court in this case ; or at least in the reasoning of Mr. Justice Cowen, who pronounced that decision, for he says, in substance, that none of the provisions of the Revised Statutes in connection with which the twenty-second section of the article relative to granting letters testamentary is found, “ can, with any degree of propriety, be applied to the testator’s real [ *238 ] estate.” I will only add, that if the supreme court is right in *supposing that the executor, who neglects to take out letters testamentary, may still go on and execute the trusts of the will relative to real estate, and that the powers and duties of the administrator with the will annexed are limited to the personal property merely, some further legislation on the subject may be necessary, for it will be very difficult, if not impossible, in cases of that kind, to carry into effect the intentions of the testator without the expense of a chancery suit, where he has blended his real and personal estate together for the purposes of his will; as is generally the case in this country.
Even if the administator, with the will annexed, had the power in this case to sell the real estate in the same manner as the executor would have had if living, I think it is very evident he could not sell, upon a price to be agreed upon by him, or on the appraisal of disinterested persons, so as to transfer a good title to the defendant. At the time the plaintiff offered to the defendant a deed from the public administrator, and for more than two years after the death of Mrs. Myers, the fifty-sixth section of the title of the Revised Statutes as' to the powers and duties of executors and administrators in relation to the sale of real estate, 2 R. S. 109, was in full force in every part of the state ; and it continued in force as to the city of NewTork until the statute of 1837, concerning the proof of wills, &c. virtually repealed the act of the 9th of May, 1835, in relation to sales of real estate by executors. See Statutes of 1835, p. 304 ; and of 1837 p. 532, § 43. That section of the Revised Statutes required sales of real estate by any executor, made for the payment of debts ’’-and legacies, in pursuance of any authority given by any last will, to be made at public auction, and in the same manner as sales by executors and administrators under orders of surrogates. Although the words for the payment of debts and legacies are used in that section, it necessarily embraced all sales by executors, except sales which were to be made for the purpose of re-investing the proceeds in other real estate for the purposes of the will. For every gift of personal estate, or of any interest therein, or of the proceeds of real estate which the testator has directed or authorized to be converted into person- [ *237 ] alty and to be distributed in that form, is in fact a *legaey to the person intended to be beneficially interested therein, whether such *181 legatee is entitled to a specific sum, or to an annuity^ or other provision for his support or education or to the whole proceeds of the sale as a residuary interest therein.
It is insisted, however, on the part of the plaintiff in error, that the agreement of the executor contained in the lease of January, 1825, took the case out of the operation of the statute and authorized the administrator de bonis non, to convey pursuant to the terms of that agreement, without selling at public auction. It is undoubtedly true, that a valid contract to sell lands under a power of sale binds the estate in equity, and therefore the court of chancery will compel an execution of the contract by those upon whom the estate is cast, even where the power has been extinguished by the death of the party who had contracted to sell under the"’ power while it was in existence. Shannon v. Bradstreet, 1 Sch. & Lef. 52 ; 1 Sudg. Law of Vend. 10th Lond. ed. 96 ch. 2, § 1 sub. 35; 10 Ves. Rep. 315. But the defendant in this case was entitled to the legal title, according to the condition of his bond, and was not bound to take a conveyance which could only be made good by a suit in chancery. And besides, if the contract in this case was binding upon the estate, it is not perfectly certain that such contract would have enabled the executor himself to convey the legal title to this land, contrary to the express provisions of the Revised Statutes, which were in force at the death of Mrs. Myers. Certainly it would not have made the conveyance from the administrator valid, when his whole power, if he had any over the subject, depended upon the operation of the Revised Statutes alone. At the time of the decision of the demurrer in the chancery suit alluded to by the counsel for the plaintiff, I was not aware of the existence of the provision of the Revised Statutes, requiring sales under powers contained in wills to be at public auction ; and as it appeared that the administrator, with the will annexed, was then willing to convey the lot in question according to the terms agreed upon by the executor in his lifetime, I supposed the defendant would obtain a valid and perfect- title at law under the new provisions of the Revised Stat- [ *238 ] utes relative to the powers of an administrator with the will annexed. The decision in that case was therefore made, without any examination as to the validity of the contract made by the executor in the lifetime of the widow ; though I then intimated an opinion that such a contract was not binding upon those who were beneficially interested in the proceeds of the sale of the estate, as residuary legatees of the money to be raised by the sale of the remainder after the termination of the life estate of the widow. Upon full examination of the question, after hearing the able arguments which have been addressed to us in this case, I am confirmed in the opinion I then entertained as to the invalidity of that contract.
The time when a power in trust for the sale of the testator’s real estate *182 can legally and properly be executed, must, like every other disposition of property by will, depend upon the intention of the testator, to be ascertained upon an examination of every thing contained within the four corners of the will, and with reference to the objects the testator had in contemplation by the execution of the power. It is not very strange, therefore, that we should find cases in the books on this subject, which are apparently in conflict with each other, until they are analyzed in reference to this principle. of carrying into effect the intention of the testator. Thus the anonymous case cited upon the argument from Leonard's Reports, as having been ■ decided by the court of king’s bench in Easter term, 1574, (2 Leon. 220,) is apparently in conflict not only with the opinion of Sir Edward Coke, but with the more recent decision of the court of exchequer in July, 1808, in the ease of Meyrick v. Coutts, referred to by Sir Edward Sugden in his treatise on powers. Sugd. on Pow. 278. But these cases are perfectly reconcileable on the principle before stated. In the case from Leonard, although it is imperfectly reported, it is evident the remainder, after the life estate of the wife, was limited to the testator’s issue, if he should have any by his wife. But, in the language of the reporter, because he was in doubt whether he should have issue or no, he willed that if he should not have any issue by his wife, that then, after the death óf [ *239 ] *his wife, the lands should be sold, and the moneys distributed to three of his blood. -That those three persons were then in esse, and specifically named in the will of the testator, is evident from what is stated in the opinion of the court—for it is there said, “the money coming by sale are to be distributed to persons certain as legacies.” The object of the testator in that case, therefore, was not to postpone the sale until after the death of the wife, in case he should have no issue by her, and thereby to keep the three legatees named out of the enjoyment of the proceeds of the remainder during her life; bat the words, “ after the death of my wife,” were merely used in the power of sale to show that the execution, of the power was not to impair or in any way affect the previous devise of the life estate which he had devised to his wife. It was, therefore, but carrying into effect the intention of the testator as soon as it was ascertained, subséquent to his death, that he could have'no issue by his wife, to permit the remainder to be sold, subject to her life estate in the land, so that the proceeds of such sale could be immediately distributed among the substituted objects of the testator’s bounty, who had an absolute vested interest in the moneys to be raised by sucji sale, the moment it was ascertained the testator would have no issue by his wife. But, in the subsequent case of Meyrick v. Coutts, it would have been wholly inconsistent with the intention of the testator to have permitted the remainder to be sold previous to the termination of the life estate, as the persons among whom the money arising from the *183 sale of the reversion was to be distributed, were not yet ascertained, and some of them might not come into existence previous to that time. Here the testator devised a life estate to his wife, and authorized his trustees, after her death, to sell the property and distribute the proceeds among the children of B., who was then living. It is evident, therefore, that all the children of B. who were born or begotten at any time during the continuance of the life estate of the widow would be entitled to share in the proceeds of the sale of the remainder, and that the testator did not intend to have the money raised by a premature sale of *the estate would [ *240 ] be wanted for the purpose of distribution, and before it could be distributed if then raised.
The case of the Countess of Southerland v. Northmore, 1 Dickens 56, was of the same character as the anonymous case in Leonard. There it appeared that the object of the settlement was not to restrain the exercise of the power of the wife to charge the estate with the £1000 until after the death of her husband, but merely to restrain her from making that £1000 an effectual charge upon the lands settled, except in the event of the happening of both contingencies contemplated by the deed of settlement. By referring to the more full report of this case in Viner, 3 Viner’s Abr. 427, pl. 8, it will be seen that the settlement in terms authorized the wife to create this charge at any time during' her life; although in the same clause of the will the power to create the charge itself was only given in case she survived her husband, and herself died without issue by him, living at the time of her death. The court, therefore, very correctly decided that the time of the execution of the power to charge the estate with the £3000 for any purpose, and in favor of such person or persons as she might think proper, was not intended to be postponed until after the death of the husband ; but merely that the execution of such power, at any time during her life, as authorized by the deed of settlement, should not create a charge which would be valid and effectual as to the first £1000, unless she should die without leaving issue of the marriage; and as to the other £2000 that it should not be valid or effectual except upon the happening of the double contingency of her surviving her husband, as well as of her dying without leaving issue by him.
In the case under consideration, it is evident the testator contemplated a sale of his real estate subsequent to the death of his wife, for the benefit of a class of persons who should be in existence at that time, and not an immediate sale of the premises subject to widow’s life-estate therein. For in the bequest of the legacies to his two sisters and the children of his two deceased sisters, out of his personal estate, he specifies the time for the payment of those legacies, to wit.: six months after his death, and charges the executrix, as *well as the executor, with the payment thereof. [ *241 ] But the power to sell the real estate after the decease of the wife *184 is given- to ihe executor alone ; evidently showing that the testator did not contemplate a sale until after the death of the executrix. He further directs, that if either of his sisters, or the nephews and nieces, should die before the division of the real estate is. made, leaving issue, such issue shall take the share or part of the estate, or of the money arising from the sale, to which the parent if living would have been entitled. The persons who were to take the remainder of the estate, or the proceeds of the sale thereof, after the termination of the life-estate of the wife, could not therefore be ascertained until her death, when the rights and interests would become absolutely vested in the survivors of the sisters, and nephews, and nieces, and in the issue of those who had died before that time, if the power in trust itself is valid; and in case the administrator with ihe will annexed, in the contingency which has happened, cannot now execute the power in .trust, the execution thereof has devolved on the court of chancery; which court never permits a valid trust to fail for want of a trustee.
Leaving out of view, therefore, the question as to general power of an administrator under the provisions of the Revised Statutes, I think the public administrator could not, in this case, convey to the defendant a valid title to the lot at private sale, according to the terms of the agreement contained in the lease and bond ; and that the plaintiff for that reason was not entitled to recover in this suit, as there was no breach of the condition of the defendant’s bond. The judgment of the supreme court, reversing that of the superior court in the city of New-York, must therefore be affirmed upon this ground, even if the ground upon which the decision of the supreme court was based should be considered as erroneous.
Senator Yerplawck
said that he considered the language of the statute, declaring that “ administrators with ihe will annexed shall have the rights and powers, and be subject to the same duties as if they had been [ *242 ] named *executors in such will,” so clear and explicit as not to admit of any judicial construction ; that the statute must have its effect according to its terms; and that, therefore, independent of the local statute in force at the time of the conveyance, requiring sales by executors to be at public auction, the judgment of the supreme court ought to be reversed. But that statute was in force at the time, and should have been obeyed. He also thought that the executor had no right to make a prospective sale, but should have waited until after the termination of the life-estate. For these reasons, he was for affirming the judgment of the supreme court.