[No. 18189.   Department One.   December 10, 1923.]

*In the Matter of the Estate of* SAMUEL CHELLEW, *Deceased.*

VIVIAN CHELLEW, *Appellant,* v. FANNIE E. WHITE, *as Administratrix, Respondent.*[1]

EXECUTORS AND ADMINISTRATORS (101)—ACCOUNTING AND DISTRIBUTION—PETITION—SUFFICIENCY. A petition for the final distribution of trust funds in the hands of an administratrix *de bonis non,* aided by the record in the probate proceedings, is sufficient to tender issues as to the existence of the trust funds, where it appears in the proceedings of the administratrix that she admits the existence of part of such trust funds in a bank and that the same can only be paid out under an order of the probate court.

CHARITIES (5)—WILLS (72)—LAPSE OF CHARITABLE BEQUEST—CONSTRUCTION OF TESTAMENTARY TRUST. A bequest in trust will lapse on the death of the trustee, as to the unexecuted portion of the trust, where the bequest was to be expended and distributed to orphans and widows of the war with Germany, in two named parishes, in the discretion of the trustee to those "whom he may decide best."

EXECUTORS AND ADMINISTRATORS (169)—DECREE OF DISTRIBUTION —TO TRUSTEE—OPERATION AND EFFECT. A decree in probate dis-

[1]Reported in 221 Pac. 3.

tributing an estate to a trustee named in a charitable bequest does
not prevent the bequest from lapsing on the death of the trustee as
to the unexecuted portion of the trust, and is not a final adjudication
of distribution that would preclude heirs from seeking distribution
of the lapsed bequest.

EXECUTORS AND ADMINISTRATORS (181)—PROCEEDINGS FOR DISTRI-
BUTION. The dismissal of an application by an heir for final distri-
bution of a lapsed bequest will not be sustained on the ground that
the application was premature, where there appears to be no reason
for postponing an accounting to the end that a final distribution be
made and nothing remains · to be done except to determine the
character of the remaining estate in possession of the administratrix.

Appeal from an order of the superior court for
Lewis county, Reynolds, J., entered April 4, 1923, in
probate, dismissing proceedings for an accounting and
distribution of an estate, upon sustaining a demurrer
to the petition. Reversed.

*O. J. Albers,* for appellant.
*A. E. Rice,* for respondent.

PARKER, J.—This is an appeal by Vivian Chellew
from an order of the superior court for Lewis county
sustaining a motion to dismiss his petition, filed in the
matter of the estate of Samuel Chellew, deceased,
pending in that court, wherein he prays that Fannie E.
White, the administratrix *de bonis non* of the estate of
Samuel Chellew, deceased, be required to account for
the remaining property of the estate, and that such
property be distributed to him as the sole heir of
Samuel Chellew, deceased. The motion to dismiss ap-
pellant's petition was made by the administratrix, and
sustained by the superior court, upon the theory that
the petition did not show any cause for relief, taking
into consideration the record of the probate proceed-
ings. In other words, the motion was treated as a
demurrer to the petition, it being deemed amplified by
the record in the probate proceedings.

The controlling facts, as we view them, alleged in appellant's petition and found in the record of the probate proceedings, may be summarized as follows: On December 8, 1916, Samuel Chellew, then a resident of Lewis county, in this state, made his last will and testament, the following provisions of which are the only ones of any moment in our present inquiry:

"I give and bequeath unto my executors hereinafter named all the rest and residue of my property of whatsoever kind and nature, wherever situate, to be handled and used by them as Trustees, as they deem best, and to whom they may decide best, for the use of Orphans and Widows, whose homes are in the two Parishes of St. Ives and Towednack, England, to be expended by them for the relief of worthy orphans and widows of the War with Germany."

"Lastly, I hereby nominate and appoint S. C. White Trustees and the executors of this, my last WILL AND TESTAMENT. . . ."

While this language seems to contemplate the appointment of more than one executor and trustee, it is to be noticed that the deceased actually appointed only one, to wit: S. C. White. On December 9, 1916, Samuel Chellew died in Lewis county, leaving property in this state. On December 13, 1916, the will of deceased was duly proven and admitted to probate in the superior court for Lewis county, and the appointment of S. C. White as executor duly confirmed by that court. S. C. White entered upon his duties as executor, in due course giving notice to creditors and causing an inventory and appraisement of the property of the estate to be duly made and filed. On April 6, 1921, the estate being ready for settlement and distribution, in so far as its administration by the executor was concerned, upon due notice being given, an order and decree was duly entered approving the executor's final account and making distribution of the property

of the estate here in question to S. C. White in trust for use by him as directed by the terms of the will. On June 5, 1922, S. C. White died. On October 9, 1922, Fannie E. White, widow of S. C. White, filed in the probate proceedings her petition for the appointment of herself as administratrix *de bonis non* of the estate of Samuel Chellew, deceased, alleging in part as follows:

"That, at the time of the decease of the said S. C. White, the estate was not fully settled and distributed and is not at this time, the particular omission being as follows:

"That there remains in the Barclay's Bank Limited at St. Ives Cornwall, England, the sum of Two hundred sixty six pounds, twelve shillings and nine pence.

"Which money had been placed there by S. C. White to be distributed to certain parties residing in England; that under the decree of distribution this money was distributed to S. C. White to be disposed of at his discretion, but on account of failing health he neglected to check this money out of the Bank, and the same is now there on deposit to the credit of the estate of Samuel Chellew, deceased.

"That said money can only be removed from said bank by an order of the Probate Court having jurisdiction over the estate and it is necessary to have an administrator appointed as successor to the deceased executor, and that your petitioner has an interest in said funds and is a fit and proper person to be appointed as such administratrix."

Following the giving of the usual notice, the superior court entered its order appointing Mrs. White administratrix *de bonis non,* as prayed for by her, and we assume that she duly qualified by giving bond according to the order of her appointment, although the portion of the record before us does not affirmatively so show. On March 5, 1923, appellant filed in the probate proceedings his petition praying, in substance, that Mrs.

White as administratrix *de bonis non* be required to account for all trust property of the estate remaining in the hands of S. C. White and undistributed at the time of his death, and that all of such property be distributed to petitioner as the sole surviving heir of Samuel Chellew, deceased; alleging as grounds therefor the several steps taken in the probate proceedings up to and including the appointment of Mrs. White as administratrix *de bonis non;* alleging the existence of the undistributed balance of the trust funds in the bank in England, as alleged in Mrs. White's petition for appointment as administratrix *de bonis non;* alleging upon information and belief the existence of other undistributed trust property in the hands of S. C. White at the time of his death, of the approximate value of ten thousand dollars; and alleging that petitioner is a brother and the sole heir of Samuel Chellew, deceased, and as such is entitled to all of the undistributed trust property remaining in the hands of S. C. White at the time of his death, because of the lapse of the trust bequest to S. C. White in the will of Samuel Chellew, in so far as the property so bequeathed was undistributed by S. C. White at the time of his death. On March 12, 1923, Mrs. White as administratrix *de bonis non,* moved the court for dismissal of appellant's petition, specifying several grounds therefor, such as to make her motion in effect a demurrer to the petition when read in the light of the probate proceedings. On April 4, 1923, this motion to dismiss appellant's petition was heard by the court and sustained, and an order entered accordingly finally dismissing the petition. This is the order here sought to be reversed.

We first inquire as to whether, if the allegations of appellant's petition as amplified by the record in the probate proceedings be true, there remained trust

property in the hands of S. C. White at the time of his death now available to Fannie E. White as administratrix *de bonis non* of the estate of Samuel Chellew, deceased. The fact that there is such undistributed trust property seems settled by her own allegations in her petition for her appointment as administratrix *de bonis non,* in so far as the money on deposit in the bank in England is concerned; which allegations are also made in substance in appellant's petition for the distribution of such property to him as the sole heir of Samuel Chellew, deceased. It may be, however, that, upon the final hearing of appellant's petition upon the merits—that is, upon the accounting of Mrs. White as administratrix, which he prays shall be now had, it will appear that this fund admitted by her to be in the bank in England is not available to her. This, however, is a matter for final determination upon the merits in her accounting, as is also the question of her accounting for any other undistributed trust property remaining in the hands of S. C. White as trustee at the time of his death. On these questions, we hold that appellant's petition, read in the light of the record in the probate proceedings, properly tenders questions of fact as to the existence of any undistributed trust funds in the hands of S. C. White at the time of his death and now available to Mrs. White as administratrix *de bonis non* of the estate of Samuel Chellew, deceased. There is manifestly no longer any necessity for delaying final accounting and distribution of such undistributed trust property in so far as the payment of the debts of the estate are concerned, that matter having been settled by the previous decree of distribution. This is only an effort on the part of appellant to have expeditiously accounted for and distributed to him as the heir of Samuel Chellew, deceased, property

which has reverted, as he claims, to the estate of Samuel Chellew, deceased, after a settlement and distribution of that estate in due course of administration. In other words, it is an effort on his part, in substance, to assert his inheritance right in property discovered as belonging to the estate after the close of an administration of the estate in due course, a right which is plainly contemplated may be asserted through further administration as provided by section 1550, Rem. Comp. Stat. [P. C. § 9812.]

Assuming that there remained some trust property in the hands of S. C. White at the time of his death undistributed by him under the terms of the will of Samuel Chellew, deceased, and that appellant is his heir, as we must now assume in view of the motion of the administratrix to dismiss Vivian Chellew's petition being in effect a demurrer thereto, we inquire whether or not such undistributed property has reverted to the estate of Samuel Chellew, deceased, subject to distribution to appellant as an heir of Samuel Chellew, deceased. Of course, if there be no such reversion of property to the estate, then appellant has no interest supporting his right to be heard in this controversy, since he is seeking only to have the administratrix account for such reverted property. We have seen that by the terms of the will of Samuel Chellew, the property here drawn in question was bequeathed to S. C. White in trust,

".  .  . to be handled and used by him as trustee, as he deems best, and to whom he may decide best, for the use of orphans and widows, whose homes are in the two Parishes of St. Ives and Towednack, England, to be expended by him for the relief of worthy orphans and widows of the War with Germany."

Thus, it is made plain that S. C. White received this property in trust, accompanied by the sole discretion-

ary power on his part to expend and distribute it to those "whom he may decide best" of the orphans and widows of the class named. In other words, the will of the testator was to be ultimately expressed solely through S. C. White as trustee of the property, which, it seems to us in the light of the authorities, renders it plain that, when S. C. White died, there was not left any power in anyone through which the will of the testator might be expressed looking to the expenditure and distribution of the undistributed property remaining in the trust. We have in this country two leading decisions which seem to us to lead irresistibly to the conclusion that this trust lapsed, in so far as undistributed property thereof remained in the hands of S. C. White at the time of his death, in effect leaving the same as unadministered and undistributed property of the estate of Samuel Chellew, deceased, with reference to which he must now be regarded as dying intestate. In *Fontain v. Ravenel*, 58 U. S. 369, the supreme court of the United States had under consideration a problem substantially as presented here, except that, in that case, the trustees died before they were called upon to exercise their discretion in designating the beneficiaries. That, we think, however, does not change the controlling force of the logic of that decision as applicable to this case. The residuary clause in the will there drawn in question was as follows:

"I authorize and empower my executors or the survivor of them, after the decease of my said wife, to dispose of the same [certain property] for the use of such charitable institutions in Pennsylvania and South Carolina, as they or he may deem most beneficial to mankind, and so that part of the colored population in each of the said states of Pennsylvania and South Carolina shall partake of the benefits thereof."

In holding that this residuary bequest lapsed and became ineffectual because of the death of the trustees, resulting in their failure to express the will of the testator by the exercise of the discretion vested in them by the terms of the will of appointing the beneficiaries of the trust, Mr. Justice McLean, speaking for the court, said:

". . . the question in the case is, whether the residuary bequest in the will, which authorized his executors, or the survivor of them, after the death of his wife, to dispose of the surplus 'for the use of such charitable institutions in Pennsylvania and South Carolina, as they might deem most beneficial to mankind,' has lapsed, no such appointment having been made, or attempted to be made, during the lifetime of the executors.

"The bequest under consideration was intended to be a charity. The donor, having entire confidence in his executors, substituted their judgment for his own. They, or the survivor of them, was to designate such objects of his charity in the two states, 'as would be most beneficial to mankind.' It was to be placed on the broadest foundations of human sympathy, not excluding the colored race. It is no charity to give to a friend. In the books, it is said the thing given becomes a charity where the uncertainty of the recipients begins. This is beautifully illustrated in the Jewish law, which required the sheaf to be left in the field, for the needy and passing stranger.

"It may be admitted that this bequest would be executed in England. A charity rarely, if ever, fails in that country. The only question there is, whether it shall be administered by the chancellor, in the exercise of his ordinary jurisdiction, or under the sign-manual of the crown. Thus furnished with the judicial and prerogative powers, the intent of the testator, however vaguely and remotely expressed, if it be construed into a charity, effect is generally given to it. It is true, this is not always done in the spirit of the donor; for sectarian prejudices, or the arbitrary will of the king's

instruments, sometimes pay little or no regard to the expressed will of the testator.

"The testator was unwilling to give this discretion to select the objects of his bounty, except to his executors. He relied on their discrimination, their judgment, their integrity, and fitness, to carry out so delicate and important a power. He made no provision for a failure, in this respect, by his executors or the survivor of them, nor for the contingency of their deaths before Mrs. Kohne's decease. They died before they had the power to appoint, and now what remains of this bequest, on which a court of chancery can act?

"There must be some creative energy to give embodiment to an intention which was never perfected. Nothing short of the prerogative power, it would seem, can reach this case. There is not only uncertainty in the beneficiaries of this charity, but behind that is a more formidable objection. There is no expressed will of the testator. He intended to speak through his executors or the survivor of them, but by the acts of Providence this has become impossible. It is then as though he had not spoken. Can any power now speak for him, except the *parens patriae?* Had he declared that the residue of his estate should be applied to certain charitable purposes, under the statute of 43 Eliz., or on principles similar to those of the statute, effect might have been given to the bequest, as a charity, in the state of Pennsylvania. The words as to the residue of his property were used in reference to the discretion to be exercised by his executors. Without their action, he did not intend to dispose of the residue of his property.

"Where there is nothing more than a power of appointment conferred by the testator, there is nothing on which a trust, on general principles, can be fastened. The power given is a mere agency of the will, which may or may not be exercised at the discretion of the individual. And if there be no act on his part, the property never having passed out of the testator, it necessarily remains as a part of his estate. To meet such cases, and others, the prerogative power of the

king, in England, has been invoked, and he, through the chancellor, gives effect to the charity.''

Other observations made by the learned justice expressed the view of the court that the prerogative power of the King exercised through his chancellor in England does not exist in this country looking to the sustaining of charities of the nature here drawn in question, at least in the absence of appropriate legislation providing for the exercise of such prerogative power by the state; and that such power, even as it exists in England and might possibly be exercised by a sovereign state in this country if provided for by appropriate legislation, is not and would not be the exercise of the judicial power of courts of chancery, but the exercise by those courts of the prerogative power of the King or a sovereign state. We have no statute in this state evidencing any intent on the part of the state to exercise any such prerogative power.

In *Beekman v. Bonsor*, 23 N. Y. 298, the court of appeals of that state had a similar problem presented to it wherein the executor trustees had voluntarily renounced their power, resulting in letters of administration with the will annexed being issued to another. We shall not attempt to quote verbatim the somewhat involved language of the will there drawn in question. It is enough for present purposes to observe that the testator, by language used in his will, gave to trustees certain discretionary power looking to their establishing and maintaining a dispensary for indigent persons, with certain funds left as a portion of his estate; the court viewing this provision of the will as conferring upon the executors as trustees powers wholly discretionary with them. In holding that this bequest lapsed and became ineffectual so as to render the testator as dying intestate, in so far as such funds were

concerned, because of the failure of the trustees to exercise their discretionary power; in other words, because of their failure and refusal to express the will of the testator, Chief Judge Comstock, speaking for the court, said:

"The will of a testator may be ascertained by the acts of those to whom he has entrusted discretion and power. Such acts may be justly regarded as the definite expression of his own purpose.

"But, in this view of the present question, the objections encountered are, that the discretion was personal to the individuals appointed to be executors, and that they renounced the trust. That the discretion was personal, and not official, it hardly needs argument to prove. The duties to be performed were of a responsible and delicate character; and they were certainly distinct from those which are usually devolved on the office of executor. For the performance of these duties, the testator selected the persons in whose integrity and fitness he was willing to confide; and he made no provision for a devolution of the trust upon any one else in any event whatever. The plaintiff is the administrator with the will annexed; but he cannot, in that character, execute powers and trusts which were personal to the executors who have renounced. The statute, it is true, provides that, 'in all cases where letters of administration with the will annexed shall be granted, the will of the deceased shall be observed and performed; and the administrators with such wills shall have the same rights and powers, and be subject to the same duties, as if they had been named executors in such will.' (2 R. S., p. 72, § 22.) This statute has not been understood as introducing any new principle of law. (*Dimmick v. Michaell*, 4 Sandf. S. C., 409, 410; *Edgerton's Adm'rs v. Conklin*, 25 Wend., 233.) Its terms, broad as they are, do not embrace a case like the present. 'The will of the deceased shall be observed,' &c. But the precise difficulty here is, that the will of the testator, in the respect under consideration, has not been declared. His intentions, as we are now assuming, were indefinite and unexpressed, and

were to take a determinate form and expression only in the discretionary acts of the persons named as executors. Trusts and powers, perfectly defined, relating to the personal estate of a testator, without doubt devolve on the administrator *cum testamento annexo*. But he does not, in virtue of his office, succeed to a power which is personal in its very nature, and which is intended by its author to be executed only by the individuals to whom he has intrusted it.

"The written renunciation of the executors, filed in the office of the Surrogate, was, in terms, of their office as such. That renunciation has been followed by twenty years of non-interference with the estate of the decedent, in any character whatsoever. They have never taken any step in the direction of giving effect to the charities confided to their judgment and discretion. In behalf of these charities it has been argued that, although the assets of the deceased passed into the hands of the administrator, yet the personal trust reposed in the executors still lives, and is capable of execution. But their renunciation of the executorial office, followed by this long period of inactivity, can mean no less than an absolute and final abdication of the trusts contained in the will. They had a right to take that course. Conceding that they might, if they had chosen so to do, devise a plan for a dispensary, appoint the place of its location, and designate the necessary amount of funds, so that a court of equity might compel the administrator to appropriate the sum required, yet they were under no legal obligation to perform these acts. Having refused to qualify as executors, they never became accountable for any portion of the estate to be applied in charity or otherwise. Rejecting, then, the estate and the executorial duties which the testator wished to cast upon them, they certainly were not bound to accept any peculiar and still more confidential relations which the will proposed. A testamentary direction, requiring some portion of an estate to be applied by the executor to a charitable object—the plan of the charity and the sum necessary for its execution to be designated by some person not the executor—might perhaps be enforced, if the per-

son named elected to accept the personal trust and make the designation or appointment. But it is extremely plain that such acceptance must be voluntary. The right of renouncing a trust which has no necessary connection with the office of executor is no less clear than the right of renouncing the office itself; and, in either instance, the right rests upon the very simple and elementary proposition that no man can be compelled, against his own will, to execute the testamentary wishes of another. (*Burritt v. Silliman,* 3 Kern., 93.)

"The argument, therefore, for sustaining this provision of the will, founded on a supposed discretion in the executors, the exercise of which might render the testator's wishes definite and certain, must fall to the ground. Upon all the facts before us, their renunciation of all right or intention to act must be deemed final and the discretion extinct and gone. Intestacy as to any portion of the estate designed for the dispensary is the necessary result; because, in this view of the subject, the testator has failed to speak."

That, it will be noticed, was a case wherein the executors, having survived the testator, had it within their power to exercise the discretionary trust vested in them by the terms of the will, which is the condition attending the instant case wherein the trust was left partially unexecuted by S. C. White. We perceive no reason why a bequest of this nature may not partially lapse to the extent that it remains partially unexecuted, as well as that it may wholly lapse because of its entire failure of execution, when the partial failure leaves the unexecuted portion of the trust clearly severable from the executed portion thereof, as is the case here, according to the allegations of appellant's petition. The decisions in *Hall v. Harvey,* 77 N. H. 82, 88 Atl. 97, and *Zeisweiss v. James,* 63 Pa. St. 465, express views in harmony with the decisions above noticed. We are of the opinion that the petition of appellant, read in connection with the record in the probate pro-

ceedings, shows that he possesses such an interest in the undistributed trust property remaining in the hands of S. C. White at the time of his death as to entitle him to the relief he prays for.

Contention is made that the right of appellant to have the trust property remaining in the hands of S. C. White undistributed by him at the time of his death, has been finally adjudicated against appellant by the former decree of distribution entered in the probate proceedings, wherein that property was distributed to S. C. White as trustee for use as provided by the will of Samuel Chellew. That, as we view it, was only an adjudication of S. C. White's right to then receive that property, and at his discretion distribute it to certain persons of his choosing. He having failed to so distribute all of that property, and having died with some portion thereof remaining in his hands, as we must assume at this time, such remaining portion simply reverts to and becomes again an undistributed portion of the property of the estate of Samuel Chellew, deceased. In other words, it is in the same condition with reference to the estate of Samuel Chellew as property of the estate discovered after settlement and distribution, and thereby rendered subject to further administration of the estate of Samuel Chellew, deceased. Section 1550, Rem. Comp. Stat. [P. C. § 9812]. We conclude that the former decree of distribution does not stand in the way of appellant asserting an inheritance right to this property and his right to the expeditious administration and distribution thereof.

It is contended that the filing of the petition of appellant was premature, and that he should not be heard upon the questions he thereby presents to the court until the administratrix *de bonis non* files her final account and asks for final distribution of the

property remaining undistributed by S. C. White as trustee at the time of his death. It may be that the trial court would be warranted, in the light of the condition of the administration of the estate by Mrs. White as administratrix *de bonis non,* in postponing for a reasonable time the final distribution of the estate, upon being properly advised that its condition is such as to be not ready for distribution; but, as the record now stands, there seems to be no reason for the postponing of an accounting by the administratrix showing to the court the condition of the estate, what portion thereof she has reduced to her possession and what portion thereof, if any, she is unable to reduce to her possession, all to the end that final settlement and distribution thereof may be expeditiously had. Manifestly, creditors are all out of the way by force of the former decree of distribution, and nothing remains now but to ascertain the amount and character of the remaining property of the estate, what portion thereof is in possession of Mrs. White as administratrix *de bonis non,* her ability to obtain possession as to any portion thereof as may not be in her possession, the payment of the expenses of administration, including her compensation, and the making of final distribution by the entry of a proper decree.

We are not holding that the court should, even after a satisfactory accounting by Mrs. White as administratrix *de bonis non,* render a final decree of distribution without giving the usual statutory notice to the world, to the end that all persons claiming to have rights in such property, either as devisees or heirs, may be heard upon the question of who shall take as distributee. It may be that other claimants will then appear who will be able to show rights equal, or even superior, to those of appellant, but we are of the opinion that appellant has, by his petition, read in the

light of the record in the probate proceedings, disclosed such an interest on his part as a probable distributee of the remaining property of the estate as to entitle him to have the court require of Mrs. White, as administratrix *de bonis non,* an accounting as such administratrix at this time, even though such an accounting may disclose facts which may call for a further final accounting, and possibly a necessary postponing of final accounting and distribution.

The order of the superior court dismissing the petition of appellant is reversed, and the cause remanded to that court with directions to proceed as expeditiously as may be, in harmony with the views herein expressed.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.