In the Matter of the ESTATE OF HE–AH–TO–ME, Osage Allottee No. 134, Deceased.

Imogene Jefferson IRONS and Omer L. Jefferson, Jr., Plaintiffs in Error,

v.

John TALLCHIEF, Administrator of the Estate of Josephine Butler Tallchief, John Tallchief, Vernon Butler, Linda Kay Butler, Albert Waters, Omer L. Jefferson, Cecelia Tallchief, Charles Red Eagle, Omer Charles Tallchief, and Harold West, Defendants in Error.

No. 37446.

Supreme Court of Oklahoma.

Feb. 18, 1958.

Rehearing Denied May 20, 1958.

F. W. Files, Pawhuska, for plaintiffs in error.

Tillman & Tillman, Pawhuska, for defendants in error.

John L. Arrington, and John L. Arrington, Jr., Pawhuska, for Harold West, defendant in error.

BLACKBIRD, Justice.

The present appeal arises out of a controversy as to the proper devolution of a portion of the estate of an allottee-member of the Osage Tribe of Indians, named He-ah-to-me, who died May 18, 1929, while a resident of Osage County, Oklahoma. Said portion, whose value aggregates more than $200,000, was described in said decedent's will as "two-sevenths of all monies, bonds, securities and like property owned by me at the time of my death, which said monies, bonds or securities are in the hands of the guardian, to my credit at the Osage Indian Agency, or to my credit in the treasury of the United States * * *" and "* * * two-sevenths of all the income, I shall be entitled to draw in the future from Osage mineral rights, including my individual headright and inherited interests * * *". By the "Third" paragraph of her said will, the testatrix left to one of her five grandchildren, Eugene Butler, Jr., what is conceded to be a life estate in said property, by bequeathing it to her friend, Homer Huffaker, as trustee, with directions that said trustee invest said funds, and/or the derivative income therefrom, and "pay (it) over" to, or use it for the benefit of, said grandson and his family "in such amounts" as said trustee deemed "proper and reasonable." In parts, or sub-paragraphs "(b)", "(c)", "(d)", and "(e)" of said "Third" paragraph, the testatrix made provision for the contingencies of Eugene

Butler, Jr.'s pre-deceasing her, or dying without issue, by directing that, in such event, said life estate go to two other grandchildren, Charles and Perry Butler; and by making various provisions for its succession should either, or both, of these contingent beneficiaries succeed to it and thereafter die with, or without, issue. Sub-paragraph (e) provided that if either or both of said contingent beneficiaries succeeded to the trust estate, or a portion thereof, and thereafter died without issue, then, upon their respective deaths, the trustee should distribute such decedent's portion to the testatrix' two granddaughters, Louise Butler and Josephine Butler, later Tallchief. Said sub-paragraph also contained appropriate provisions as to the succession of the trust estate in the event of the death of either or both of these granddaughters.

The will made no provision, however, as to the succession of the trust estate, sometimes referred to as Eugene Butler, Jr.'s life estate, if, after the said Butler became its beneficiary, the other grandsons, Charles and Perry Butler, pre-deceased him and he left no issue—unless such a contingency may be said to have been provided for by the will's "Fifteenth" paragraph, which is referred to as its "residuary" provision. As events transpired, this contingency occurred, and, as hereinafter shown, brought about the controversy and litigation here involved. Said "Fifteenth" paragraph reads as follows:

"*Fifteenth.* I hereby give, devise and bequeath all the rest, remainder and residue of my property, real, personal or mixed, including future payments from mineral rights in the Osage Tribe of Indians, including inherited interests and those coming through wills, unto Perry Butler, Charles Butler, Josephine Butler and Charles West, Jr., share and share alike. Said bequest is intended to dispose of all property not disposed of by this will by other devises and bequests. Provided, however, that in the event that Perry Butler, Josephine Butler or

Charles Butler, or either of them, predecease me, the property bequeathed and devised to them shall go to the survivor or survivor of the three named."

Perry and Charles Butler, and Charles West, Jr., were still living at the time He-ah-to-me's will was admitted to probate, and, in accord with the final decree thereafter entered in her estate's probate proceedings in 1931, they, along with Josephine Butler, later Tallchief (the other of the four beneficiaries named in the above-quoted residuary provision) were distributed undivided one-fourth interests each in certain of said testatrix' real estate, as well as equal fractional parts of, or interests in, Osage Indian headrights, cash, trust funds and securities, other than the two-sevenths interest constituting the trust fund around which the present litigation revolves. The latter was never actually paid over to, nor delivered into the possession of, Huffaker, the trustee, even after the county court's final decree was affirmed on appeal to the district court; but remained in the custody and possession of the United States Department of the Interior. However, said Department, acting through the Superintendent of the Osage Agency, honored withdrawals therefrom for Eugene Butler. Jr.'s use and benefit, so that, in practical effect, the purpose of the trust provisions of the testatrix' will was carried out, in so far as concerned benefits to Butler during his lifetime.

In 1933, Huffaker received his final discharge as executor of He-ah-to-me's estate. After receiving the benefits of said estate's afore-described trust fund for a period approximating twenty years, Eugene Butler, Jr., died, in January, 1952, having been preceded in death by all of He-ah-to-me's other grandchildren, except Josephine Butler Tallchief.

After the final decree was entered in the probate proceedings covering Eugene Butler, Jr.'s estate, the said Mrs. Tallchief, in September, 1954, instituted, in the same county court cause in which He-ah-to-me's will had been admitted to probate and her

estate administered, new proceedings by which she obtained an order of the county court purporting to appoint her administratrix with the will annexed of the estate of the long-deceased He-ah-to-me. Thereafter, as such administratrix, she instituted, in said cause, the proceedings, which have resulted in the present appeal, by filing a petition seeking a judicial determination as to the proper succession, at the time of Eugene Butler, Jr.'s death, of the above-described trust fund, in which he had enjoyed a life estate.

In her petition for the determination of the persons who were entitled to this trust estate and for its distribution to them, she took the position that the remainder, or corpus, of said trust estate, after Eugene Butler, Jr.'s death and the termination of his life estate therein, was "undistributed" property included within the scope of the hereinbefore quoted residuary paragraph's reference to "all property not disposed of by this will by other devises and bequests"; and that since Charles and Perry Butler, who, under the afore-cited provisions of the will's Third paragraph, were to succeed to it upon Eugene Butler, Jr.'s death, predeceased him, said paragraph was never operative, and that portion of the final decree of 1931, contemplating such succession, also became inoperative; and there was no way said trust estate could descend to any one, except under the provisions of the residuary paragraph.

The only heirs or devisees of He-ah-to-me, or heirs of heirs or devisees of said testatrix, that filed answers to Mrs. Tallchief's pleadings were Omer L. Jefferson, Jr., and Mrs. Imogene Jefferson Irons, a son and daughter of He-ah-to-me's aforesaid granddaughter, Louise Butler, later Jefferson, now deceased. Their separate answers were identical in all material parts; and, after alleging that He-ah-to-me's will was construed, and that distribution of her estate was accomplished, pursuant to the hereinbefore mentioned court judgment of 1931, which had become final (many years before), further alleged that when Eugene Butler, Jr., died, there was no beneficiary designated by said testatrix' will to take

the property in which he had received a life estate, and that consequently, it "became intestate property and descended, under the law of succession to the heirs of He-ah-to-me living on the date of the death of said Eugene Butler, Jr., * * *".

After a trial, at which the essential facts were stipulated, the county court upheld Mrs. Tallchief's position and ordered distributed the hereinbefore described property in which Eugene Butler, Jr., had had a life estate, to Mrs. Tallchief, and equal shares to certain named persons therein found to be the heirs and/or devisees, or heirs of heirs and devisees, respectively, of the other residuary legatees and devisees, Perry Butler, Charles Butler and Charles West, Jr., all then deceased.

From said county court decree, Imogene Jefferson Irons and Omer L. Jefferson, Jr., appealed to the district court; and, at the beginning of the trial de novo there, objected to the introduction of any evidence in support of Mrs. Tallchief's petition, on the ground of said court's asserted lack of jurisdiction. After this objection was overruled and exception allowed, a stipulation of facts was filed (as had been done in the county court). At the close of its trial of the case, the district court, hereafter referred to as the trial court, entered a judgment which, in effect, affirmed the county court's decree, in accord with specific findings of fact and conclusions of law previously filed therein. Imogene Jefferson Irons and Omer L. Jefferson, Jr., hereinafter referred to as appellants, thereafter perfected the present appeal. During this proceeding, Josephine B. Tallchief died intestate, and the cause was revived, as to her, in the names of John Tallchief, her surviving husband and administrator of her estate, and their children, Cecelia and Omer Charles Tallchief, hereinafter referred to as appellees.

Under the first proposition they urge for reversal, appellants assert that the petition that invoked the purported jurisdiction of the court below constituted a collateral attack on the decree of distribution that became final in the probate proceedings

covering the testatrix' estate, in 1931. This proposition is based on the premise that, by filing said petition, Mrs. Tallchief was attempting to have said final decree modified, or changed, and to have the testatrix' will given an interpretation different from the one effected, or contemplated, in said decree. They say that, by her said action, said petitioner sought what they characterize as a "reinterpretation" of the will, and that, in effect, she was asking the court to do something that had already been done by the court decree entered many years ago. This argument states the substance of the theory underlying their aforementioned challenge to the jurisdiction of the trial court to hear, and act upon, said petition. In support of such argument, appellants refer to portions of the 1931 judgment in which the will's Fifteenth paragraph was referred to as containing "residuary bequests", as distinguished from the "specific bequests" contained in the Second to Fourteenth paragraphs thereof; to said judgment's finding that He-ah-to-me's will contains a "complete scheme of distribution" of all her estate; and to portions of said judgment ordering distribution, under the residuary paragraph, of *some* real estate, funds and personal property of the estate. As to the latter, appellants infer that since the decree ordered *some* property distributed under the residuary paragraph, it was a final and conclusive determination as to the character and extent of *all* property that then, or, *in the future,* could, or should, pass under the provisions of said paragraph.

▮▮ The trial court did not view the petitioner's action as a collateral attack on the 1931 judgment. His findings show that he was of the view that the petitioner was merely seeking something that could not, and was not purported to have been, accomplished in said judgment. In this connection, it will be remembered that when the 1931 judgment was entered Charles and Perry Butler (who were to receive the Eugene Butler, Jr., life estate in the event he pre-deceased the testatrix or died without issue) were still living. Then, no one could predict, with any degree of certainty,

that either Charles or Perry would outlive Eugene, Jr., or, on the other hand, that they both—as it later happened—would die before he did. It is therefore not surprising that some of the findings contained in the district court's 1931 judgment, with reference to the property here involved, and particularly the one mentioning that "if Eugene Butler, Jr., leaves no issue, then by substitution, a life estate in said property passes to Charles Butler and Perry Butler * * * if both living, and if one deceased, * * * (etc.) * * *" were premised on the assumption that at least *one* of these named contingent beneficiaries would be living when Eugene Butler, Jr., died. But to say that, in drafting He-ah-to-me's will, the possibility that this would not occur was not taken into consideration when the residuary paragraph was written into it, would be to assume that said will's plan of succession was incomplete and that it failed to proscribe the Eugene Butler, Jr., life estate from descending as intestate property upon said beneficiary's outliving Perry and Charles and thereafter dying without issue. This would be both inconsistent with the well-recognized presumption against intestacy (see Tit. 84 O.S.1951 sec. 166, 167; Waldon v. Baker, 184 Okl. 492, 88 P.2d 352; Dalton v. Eash, 411 Ill. 296, 103 N.E.2d 483; In re Smith, Fla., 49 So.2d 337) and contrary to the finding of the district court in the 1931 judgment as to the completeness of the scheme of distribution contained in He-ah-to-me's will. Under the cited presumption, the residuary clause of a will must be construed so as to prevent intestacy "as to any part of the testator's estate unless there is an apparent intention that the property should be excluded from the will" (Dalton v. Eash, supra [411 Ill. 296, 103 N.E.2d 485] citing Gridley v. Gridley, 399 Ill. 215, 77 N.E.2d 146). In the present case there is nothing revealing such an intention. The detailed scheme of distribution outlined in the will's Third paragraph, as well as the language of the Fifteenth paragraph, shows beyond reasonable doubt that it was definitely the intention of the testatrix not to exclude, but to include, the property involved in this

appeal, within the provisions and scheme of succession contained in her will. Though a reading of the Third paragraph alone might seem to indicate her intention to keep said property within her own blood line, which would exclude from inheriting any part thereof Harold West, a descendant of Charles West, who (being the grandson of the testatrix' half sister) is the only one of the Fifteenth paragraph's four residuary legatees not in said blood line—if such had been her intention, it would have been a simple matter to have made this particular property an exception to said residuary clause or paragraph. Instead, she made it clear by the unmistakable and unambiguous language of her will that this was not her intention. In view of the foregoing, we are of the opinion that the trial court's determination that said property came within the operation of the residuary provisions of the will is neither contrary to law, nor clearly against the weight of the evidence.

■ As to the matter of the trial court's jurisdiction, and the authority of the county court, to appoint a new administrator and reopen He-ah-to-me's estate for further administration and distribution, years after the original probate proceeding had been closed and said estate's executor discharged, as occurred in this case, appellees rely upon Tit. 58 O.S.1951 sec. 692, which reads as follows:

"The final settlement of an estate, as hereinbefore provided, shall not prevent a subsequent issue of letters testamentary or of administration, or of administration with the will annexed if other property of the estate discovered, or if it become necessary or proper for any cause that letters should be again issued."

The tenor of appellees' argument is that the unadministered corpus of the trust estate involved here (in which Eugene Butler, Jr., had a life estate that terminated upon his death) is to be considered as "other property of the estate discovered" within the meaning of that expression as used in the above quoted statute; and that, consequently, said statute furnishes express authority for proceeding in the manner that she did. Appellants say that this is an absurd interpretation of said statute and argue that if there is any way whatsoever of vesting title to said property in the heirs and/or devisees of the four residuary legatees, supra, it is only by prosecuting an action cognizable in the district court, a court possessing equitable power or jurisdiction. The question thus presented appears to be one of first impression in this jurisdiction. California has had a statute that is identical in material wording with sec. 692, supra; and, it is very probable that, in view of the number of Oklahoma statutes governing probate matters derived from that State's Probate Code, § 1067, the two statutes have a common origin. In California Jurisprudence, Vol. 11b, pages 836, 837, after quoting the California statute, it is said:

"Administration of a part of an estate is not exclusive and complete; the property not administered upon may be considered as property discovered after final settlement and may be administered under a subsequent issue of letters."

The same view prevails in Washington under a similar statute Rem.Comp.Stat. § 1550 (see In re Chellew's Estate, 127 Wash. 382, 221 P. 3, 8); and, in Porter v. Wheeler, 131 Wash. 482, 230 P. 640, 643, it was shown that to accomplish administration of an unadministered portion of a decedent's estate, reopening the estate in the probate proceedings is preferable to instituting an action of equitable cognizance. In this connection, see 21 Am.Jur., "Executors and Administrators", sec. 26, Note 1. These cases, and others, also lend support to the view that a proceeding for the interpretation of a portion of a will, in a manner not in conflict with a former final decree, should not be considered a collateral attack on said decree. As to a related question, see In re Ewer's Will, 177 Cal. 660, 171 P. 683. While there are statements in a South Dakota case, In re Smith's Estate, S.D., 71 N.W. 2d 577, 581 (which State's statute is the same as sec. 5948, Compiled Laws of Dakota, 1887, from which our statute was adopt-

ed) that might be interpreted so as to lend support to giving the word "discovered" in sec. 692, supra, a strict, or narrow, interpretation, we think, from an examination of the authorities cited for those statements, it is plain that they were not intended to proscribe the reopening of the administration proceedings for the distribution of property *never before distributed*. See 11b, Cal.Jur., "Executors and Administrators", sec. 1291, Note 18. In accord with the foregoing, we hold that the county court had original jurisdiction under sec. 692, supra, to entertain the new and additional probate proceedings instituted by the petitioner in the estate of He-ah-to-me, and to enter the decree therein entered. It being tacitly conceded that the trial court had jurisdiction, by reason of its appellate powers in probate matters, if the county court had original jurisdiction, it follows that the trial court correctly overruled respondents' challenge to its jurisdiction.

As we have found no valid cause for reversal in the argument under either of the propositions urged by appellants, the trial court's judgment is affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.